WILLIAM CRUMP *v.* J. H. MIMS and others, Trustees, &c.

If a road be dedicated by the owner of the soil to the use of the public, and be used by them under such dedication, it becomes a public road *immediately;* it is only for the lack of other evidence of dedication, that the lapse of twenty years is resorted to.

Where the dedication of a public road is once established, either by the lapse of time or otherwise, such obstruction or disuse as will afterwards defeat the dedication, must continue for twenty years.

A public road over a ford is not done away with by the building at the same passage, a bridge which affords the public a more acceptable transit, provided that the ford is used when the bridge is out of repair, or down ; and this, even where the owner of the adjacent lands erects a fence across the approaches having a slip gap in it at the road, which is used by the public whenever they have occasion to pass.

The raising of the water at the ford by a dam of a Navigation Company chartered by the State, so as to render it unfordable, only suspends *the use* of the franchise, and upon the destruction of the dam enjoyment of the franchise is restored.

The rules of pleading at common law, in regard to *materiality, certainty, prolixity, obscurity,* &c., prevail under the Code of Civil Procedure.

(*Woolard* v. *McCullough,* 1 Ire. 437 ; *The State* v. *Marble,* 4 Ire. 318, and *Ingram* v. *Hough,* 1 Jon. 39, approved.)

INJUNCTION, before *Tourgee, J.,* on a motion to dissolve, at Spring Term 1870 of CHATHAM Court.

The defendants, as Township Trustees, had employed one Thomas to open, from the abutments of a bridge, a way to an old ford across Cape Fear River at Haywood; and upon his doing this, the plaintiff, who owned the land at that place, brought this action for damages, for pulling down a fence, &c., and for an injunction, He obtained an order of restraint in vacation. At term the defendants answered, alleging that the way opened by them was a public road; and thereupon they moved to vacate the order.

It appeared by the testimony that the ford was known as *Quilla's Ford* as far back as in the year 1799; there being some evidence that the owner of the land had dedicated the passage to the use of the public even before that date. Previous to that time the town of Haywood had been laid out, with one of its principal streets leading to the ford. Previous to 1818, the ford was part of a road worked and used by the public. In 1818 a bridge was built across the ford, which, after standing for six or eight years, was washed away. While the bridge stood, both it and the ford were used, at the option of travellers, and the ford continued to be used after the destruction of the bridge. Afterwards another bridge was built, which was carried away in 1830. During its continuance, the ford was used whenever convenient.

In 1835 or 1836, another bridge, called Minnis', was erected, which stood about *fifteen* years. In 1837 or 1838, a fence was built across the passage to the ford, i. e., as we assume, on the *locus in quo*, which remained until the bridge was removed, except when temporarily swept away by freshets. This fence was provided with draw bars, which were let down by the travelling public at pleasure, and the ford was used whenever the bridge was unsafe. In 1852 or 1853, another bridge was erected, which remained until 1854, and the ford was used as before. A dam of the Deep River Navigation Company

raised the water at the ford so that it could not be used until 1865, when the dam was burned.

His Honor allowed the motion to vacate; and the plaintiff appealed.

*Howze,* for the appellant.
*Phillips & Merrimon, contra.*

RODMAN, J. (After stating the case as above.) The above statement of facts fully supports, we think, the general conclusions arrived at by his Honor. We are not called on to make a final decision on the facts. This will be the duty of a jury hereafter, when the parties go to trial upon the issue joined. Our duty is only to say whether the plaintiff has made a case entitling him to a continuance of the injunction.

It seems to us that he has not.

Independent of the long use, there is *some* evidence tending to show that before 1799 the then owner of the *locus in quo* had dedicated a road over it to the public. It does not require a user of twenty years, or of any definite time, for this purpose; any act done by an owner which clearly shows such an intention on his part, and a subsequent use by the public will suffice: *State* v. *Marble,* 4 Ire. 318.

Putting that aside, however, it seems that ever since a time prior to 1799, the ford, and of necessity the approach to it, which is the *locus in quo,* has been used by the travelling public at its pleasure or convenience, with no other obstruction than the fence with bars, which existed for about fifteen years after the building of Minnis' bridge in 1837. Put aside for the present the effect of such an obstruction, we see no argument which can be urged against the acquisition by the public of the franchise in controversy. It is not disputed that a user for twenty years will raise a presump-

tion in favor of a public road: *Woolard* v. *McCullough,* 1 Ire., 437.

In this case the user seems to unite all the requisites : it was over a road leading from a town to the capital of the State ; it was sufficient in time ; it was *" nec vi, nec clam, nec precario."* The erection and public use of a bridge over, or along side of, the ford, was no interruption or abandonment of the right to the ford and its approaches, although it might, and doubtless did, diminish the frequency of its use. There may be two public roads parallel and contiguous to each other, or super imposed one above the other, as is often the case when a railway crosses another road at a different level.

Then what is the effect of the erection of bars by the plaintiff? We are referred, on this point, to *Ingram* v. *Hough,* 1 Jon. 39, to show that such an exercise of authority rebutted the presumption of the easement. But we do not think that case supports the plaintiff's view. In the first place, the road there claimed was a private one, not capable of being granted by a parol dedication, as a public road may be ; it did not appear to have been used for twenty years before the erection of the gates ; it had been turned by the defendant, with the acquiescence of the plaintiff ; and there were other circumstances; all of which justified the Judge in leaving it to the jury to say whether the presumption of a grant was not rebutted.

In this case, the full period had run in favor of the public, and a right to the franchise must be presumed to have existed when the obstruction began. The burden is on the plaintiff to make good, his claim in derogation of the public right. No doubt, on a non-use of a public road for twenty years, an abandonment by the lawful authority would be presumed ; and so after an acquiescence in an obstruction for that time of a right to continue it. But the plaintiff lacks

the capital element, of time. Moreover, the ford was not abandoned; when it was impassable, or the bridge was in good order, the public, having no inducement to use the ford, permitted the plaintiff to keep up his bars, but under other circumstances they let them down. But as we wish carefully to abstain from saying anything which might prejudice the plaintiff in case of a trial by jury, we express no opinion as to the character of the occupation.

The disuse of the ford while the water was raised by the dam of the Deep River Company, can have no bearing; a right given to that Company cannot help the plaintiff. When the dam was burned, the ability of the public to use the road returned; the *right* was never suspended.

We take occasion here to suggest to pleaders that the rules of the common law as to pleading, which are only the rules of logic, have not been abolished by the Code. Pleas should not state the evidence, but the facts, which are the conclusions from the evidence, according to their legal effect; and complaints should especially avoid wandering into matter which if traversed would not lead to a decisive issue. It is the object of all pleading to arrive at some single, simple and material issue. If the plaintiff alleges immaterial matter, if traversed it leads to a jury trial, and consequent expense and delay, and upon such a verdict no judgment can be pronounced. To use the present case as an example: the plaintiff might have alleged simply a trespass on his land, and put the defendants to justify under the right of way. The statement of the facts going to support the plaintiff's demand for an injunction, should have been put in an affidavit separate from the complaint; and so of those alleged by the defendants in answer. Argumentative pleading is demurrable, the error, however, should be distinctly pointed out. The Judge will allow an amendment, of course, but ordinarily it will only be on payment of costs.

The injunction was properly dissolved. The defendant will recover costs in this Court.

PER CURIAM.                                    Affirmed.