WALTER CLARK v. PATAPSCO GUANO COMPANY.

(Filed 26 February, 1907).

1. **Issues—Contentions Preserved.**—When under the issues submitted
a party to a suit has a fair chance to develop his case to the
jury, and may preserve his defenses under proper requests for
special instruction, and the rights of the parties are determined
and the judgment supported by the finding, it was not error in
the Court below to refuse the issues tendered.

2. **Issues Tendered Covered by Charge Under Issues Submitted.**—It
is not error in the Court below to refuse an issue tendered if,
under the issues submitted and under full and correct instruc-
tions of the Judge below, with proper reference to the evidence,
the issues of fact involved are correctly submitted to the jury.

3. **Issues—Pleadings.**—It is not error in the Court below to refuse
an issue of fact not raised by the pleadings.

4. **Evidence—Sufficiency.**—Evidence that the plaintiff had a dam to
prevent the overflow of water from a river upon his land and
which never broke until the erection below of a cross-dam by
the defendant; that the cross-dam prevented the natural over-
flow-water from the river being carried down a natural flood-
channel on defendant's land, and that since the erection of the
cross-dam by the defendant, the plaintiff's dam had broken three
times during freshets on account of ponding water against it, is

such open and visible connection between cause and effect as to make it proper to be submitted to the jury, especially as the plaintiff had testified that the first break in his dam was caused by the defendant's cross-dam ponding water back and against it.

5.  **Damages—Flood Waters—Servient Tenant.**—A land-owner holds his land subject to natural disadvantages as to flood or surface-waters, and he is liable to an adjoining owner for such damages as may result proximately from his erecting a dam across the natural flood-channel of a river on his own lands, whereby water is ponded upon the lands of such adjoining owner.

6.  **Tort-feasors—Liability**—*Tort-feasors* contributing to the same injury are jointly and severally liable, and the one who puts in motion one cause of the injury is liable to the same extent as if it had been the sole cause, the law not undertaking to apportion the liability.

CIVIL ACTION, tried before *Shaw, J.,* and a jury, at June Term, 1906, Superior Court of HALIFAX County. From a judgment for plaintiff, defendant appealed.

The plaintiff alleges that he owns and cultivates a tract of land in Halifax County, containing about 1,400 acres and lying on the south side of the Roanoke River, and the defendant owns and cultivates a large tract of land which lies above the plaintiff's and between it and the said river. The plaintiff and those under whom he claims have for many years maintained, on what is now his farm, a dam or embankment, which is parallel with the said river and about one-half mile therefrom, for the purpose of preventing the flooding of the plaintiff's cultivated lands by the waters of the river which overflow its banks in times of high freshets. There is a large bend in said river just opposite the farms of the plaintiff and defendant, the same beginning on defendant's farm, extending out in a north or northeast direction, and ending just below plaintiff's farm. Extending across said bend, from about where it begins on defendant's farm to where it ends below plaintiff's farm, is a wide natural depression, or drain, ranging in width from about three

144—5

hundred yards to a mile, which is the natural course, or drain, for a large portion of the waters of said river in times of freshets and floods. Said drain runs about parallel to plaintiff's dam, between it and the river, and not only affords room for the spread of the waters of the river, but takes the overflow-waters, or the greater part thereof, across said bend and past plaintiff's farm, very much more rapidly and quickly than the same could be taken by the course of the river. In the year 1897 the defendant wrongfully and unlawfully erected a cross-dam from a point on Roanoke River about opposite the lower part of plaintiff's dam, across said depression or drain, to the plaintiff's dam near its lower end, extending the same over the lands of one W. H. Josey, and for a short distance over the plaintiff's land, and joining it to the plaintiff's dam without plaintiff's consent. Said cross-dam runs at about a right angle to plaintiff's dam, and was made higher and much stronger than his dam. The defendant has ever since wrongfully and unlawfully maintained said cross-dam.

That the defendant wrongfully and unlawfully erected a dam or embankment, from the end of said cross-dam next to the river up and along said river to a point some distance above plaintiff's farm, and thence across to the high land of the defendant's farm, the latter part of said dam being called the "upper dam." The defendant wrongfully and unlawfully maintained said dams until 25 May, 1901.

It is further alleged that the defendant unlawfully and wrongfully obstructed the natural flow of the water in the river and caused the same to pond and collect in larger quantity than it otherwise would have done. It is then alleged that in May, 1901, there was a large freshet in the river, and the defendant's upper dam, by reason of its negligent and faulty construction, gave way, and the waters of the river

CLARK *v.* GUANO CO.

A to Z—Highland Dam.   A to C—Defendant's part of Highland Dam.   C to D—Josey's part of Highland Dam.   D to E—Plaintiff's dam.   E to Z—
E. T. Clark's part of Highland Dam.   F to G—Sand Dam or Upper Dam.   G to H—Cross-dam or "Bull Buster".
The break in plaintiff's dam is indicated by the red line across his dam near "H".
The letter I indicates the point where the railroad crosses the plaintiff's dam, and where the railroad company broke the same.
The letter J indicates railroad bridge across the river, there being a trestle from I to J.
The Butterworth and Smith dams are above A and are not shown on this map.
The Highland Dam continues up the river and beyond the Butterworth and Smith lands.
The plaintiff claims that the whole of the lowland outside the Highland Dam is the flood-channel of the Roanoke River, that is, from "AA" to "BB".

were thrown upon the plaintiff's land in much greater volume and with much greater force than would have been the case if the said dam had not been there, and that the lower or cross-dam stopped the flow of the water as it rushed down the said natural drain or depression and caused it to be ponded back on the plaintiff's land and against his dam so that it broke and the water escaped through the breach thus made and flooded the plaintiff's lands, to his great damage. The plaintiff also alleges separately that the said wrongful acts of the defendant were negligently done, in respect not only to the manner of constructing the dams, but to the obstruction of the natural flow of the water.

The material allegations of the complaint were denied by the defendant, which pleaded specially that it had acquired an easement, by twenty years' adverse user, to maintain the lower or cross-dam as well as the other dams described in the complaint, and that it owed no duty to the plaintiff concerning the same and had committed no wrong to him by reason of the alleged acts of which he complains.

In order to show that the plaintiff's dam was broken by the ponding of water back upon it, and that this was caused by the cross-dam of the defendant obstructing the natural flow of the water from the river down the natural depression or channel and through the defendant's land, the plaintiff proposed to show by his own testimony that since the cross-dam was erected his dam had been broken several times at the same place. The defendant restored it each time it broke, and the plaintiff testified that when restored it was not as good a dam as it was before the first break. It was about the same height, though not as thick. This evidence was admitted over the defendant's objection. The plaintiff had previously testified that the break in his dam was about ten feet from the defendant's cross-dam—right at the junc-

tion of the two dams. The witness also testified that if the upper dam and the cross-dam were not there, the natural course of the overflow-water during freshets would be down the deep depression on the defendant's land, and that his dam had not broken until the cross-dam was built, the latter being higher and thicker than his dam. There was evidence tending to show that the deep depression on the defendant's land served as a natural drain or flood-channel for the waters of the river in times of freshets. The defendant's proof tended to show that the plaintiff's dam was stronger and better when it was restored than it had been before. The parties introduced testimony which tended to sustain their respective contentions.

The defendant in apt time requested the Court to submit the following issues to the jury: "1. Did the defendant by its maintenance of its river dam wrongfully cause any injury to the plaintiff? 2. Did the defendant have an easement to maintain said dam? 3. Did the plaintiff enter into an agreement with the defendant to forego any right to recover damages if the defendant would restore plaintiff's dam to the condition in which it was before the injury? 4. Did the defendant comply with said agreement? 5. What damage, if any, has plaintiff sustained?" The Court refused to submit the issues, and defendant excepted. The Court then submitted three issues, which, with the answers thereto, were as follows: "1. Did the defendant negligently obstruct the natural flow of the flood-waters of Roanoke River by its dams, and cause the same to collect and be thrown against plaintiff's dam in greater volume and force than they naturally would have been, and thereby break plaintiff's dam and flood and injure his farm, as alleged? Ans.: No. 2. Did defendant by its dam wrongfully and unlawfully obstruct the natural flow of the flood-waters of Roanoke River

and cause the same to collect and be thrown upon plaintiff's dam in greater violence and force than they otherwise would have been, and thereby break the same and flood and injure plaintiff's farm, as alleged? Ans.: Yes. 3. What damage, if any, is plaintiff entitled to recover? Ans.: $1,000."

The Court charged the jury in part as follows: "The plaintiff contends that outside of said dam and between it and the main channel of the river there is a natural depression or drain 300 or more yards wide, which is a natural flood-channel of Roanoke River, that is, a channel through which the overflow-waters of the river naturally flow whenever the waters rise sufficiently high to overflow the banks of the main channel of said river, and the Court charges you, if you find this to be true, that there was such a flood-channel between the plaintiff's dam and the river, that the defendant had no right to obstruct said channel with his dam or dams, unless the defendant has shown by a preponderance of evidence that it had an easement or prescriptive right to do so." "That water resulting from an overflow in districts where flood-waters cover great tracts of land may be treated as surface-water, and the land-owner incurs no liability where in protecting his land from such overflow he throws the water upon an adjoining proprietor, except when he diverts or obstructs water from the flood-channel of such stream, for the flood-channel of a stream is as much a natural part of it as is the ordinary channel." The defendant excepted to each of these instructions.

The other facts pertinent to the exceptions relied on in this Court are stated in the opinion. There was a judgment upon the verdict for the plaintiff, and the defendant appealed.

*Daniel, Travis & Kitchin* for plaintiff.

*Day, Bell & Dunn, Aycock & Daniels* and *Murray Allen* for defendant.

WALKER, J., after stating the case: There are only two exceptions discussed in the appellant's brief, and those not mentioned are to be taken as having been abandoned under Rule 40 of this Court. 140 N. C., 666. While we are not required to consider them, they have been examined and found to be without merit.

The Court below need not submit issues in any particular form. If they are framed in such a way as to present the material matters in dispute and so as to enable each of the parties to have the full benefit of his contention before the jury and a fair chance to develop his case, and, if when answered, the issues are sufficient to determine the rights of the parties and to support the judgment, the requirement of the statute is fully met. *Hatcher v. Dabbs,* 133 N. C., 239; *Falkner v. Pilcher,* 137 N. C., 449; *Jackson v. Tel. Co.,* 139 N. C., 347. This case is much like the one last cited in principle. Here, as in that case, the defendant, by proper requests for instructions, could have had the benefit of all the defenses which are covered by the issues it tendered, and indeed the charge of the Court presented the case to the jury, under the issues submitted, in every possible aspect, except as to the settlement with the plaintiff, and this was not pleaded. That matter was, therefore, not properly before the Court, as it was not made an issuable fact by the pleadings. The question of easement was submitted to the jury under the second issue with full and correct instructions as to what would constitute an easement and with proper reference to the evidence relating thereto. The jury were directed to answer the second issue "No" if they found that no easement to maintain the dam existed. They answered the issue "Yes," thereby finding that there was no easement. We do not think the defendant was in any sense prejudiced by this action of the Court. *Cowles v. Lovin,* 135 N. C., at p. 488; *Deaver v. Deaver,* 137 N. C., 246. If

the defendant succeeded in showing that the easement existed at any time, there was evidence of non-user for as much as twenty years (*Crump v. Mims,* 64 N. C., 767), and whether there had in fact been such disuse was a question for the jury. They gave their verdict on this point against the defendant. This disposes of the questions of easement and settlement. The question raised by the defendant's first issue was certainly embraced by the second issue submitted by the Court. Indeed, the latter more clearly and definitely presented the precise matter in controversy, and was therefore the more preferable of the two, as will hereafter appear.

The two questions reserved, under the Rule, in the defendant's brief, and to which the argument before us was mainly addressed, relate, first, to the competency of the plaintiff's testimony as to the several breaks in his dam after the defendant's cross-dam was constructed, and, second, to the liability of the defendant for having obstructed the flood-channel of the river on his own land by his cross-dam and thereby diverting the water to the plaintiff's dam and causing the same to break and his lands to be flooded.

As to the relevancy of the evidence admitted by the Court, the ruling, we think, was free from error. The plaintiff testified that before the cross-dam was erected the overflow or flood-water of the river was accustomed to pass down the depression at the foot of his dam without doing any injury thereto, and that his dam was broken by the ponding of the water back against it, which was caused by the obstruction of the defendant's cross-dam to its natural flow. He further stated that his dam had never been broken by the water before the erection of the cross-dam, but that after its erection, it had broken three times during freshets, on account of the ponding of the water. There was no objection when

he testified to the first break in his dam in May, 1901. We do not see why the evidence as to all the breaks was not relevant to the issue. If the dam had not been injured before the cross-dam was erected and the water was ponded back, and the plaintiff's dam was broken several times after it was erected, this would seem to indicate a causal connection between the erection of the dam and the injury which followed. There was the positive evidence of the plaintiff as to the cause of the first break in the dam, namely, the freshet and the cross-dam; and, if necessary, this should be considered in passing upon the testimony to which objection was taken. If by relevancy is meant the logical relation between the proposed evidence and the fact to be established, the testimony was admissible when tested by this definition. It is not a case where conditions are required to be the same, or at least similar, as where a comparison between two things is made to ascertain if they have the capacity to produce the same effect, as in *Rice v. Railroad,* 130 N. C., 375, and *Bullock v. Canal Co.,* 132 N. C., 179; nor is the question like that raised in *Warren v. Makely,* 85 N. C., 12, and *Bruner v. Threadgill,* 88 N. C., 361, where it was attempted to show the value of one tract of land by comparing it with that of an adjoining tract. Our case is more like that of *Johnson v. Railroad,* 140 N. C., 581, and the class of cases to which it belongs, in each of which the plaintiff, in order to show that sparks from a certain engine had set his property afire, was permitted to show that the engine had emitted sparks shortly before or after the fire. *Knott v. Railroad,* 142 N. C., 238. In *Aycock v. Railroad,* 89 N. C., 321, the fact that a train had just passed was held to be presumptive evidence that it had caused the fire, which was discovered near its track. Under the circumstances of this case there was an open and visible connection between

the obstruction of the water by the cross-dam and the subsequent breaking of the plaintiff's dam. The law does not require a necessary connection, which would practically exclude all presumptive evidence, but such as is reasonable, and not latent and conjectural. *Bottoms v. Kent,* 48 N. C., 154; *Johnson v. Railroad, supra.* The evidence which was admitted fulfils that requirement. We do not hold that this evidence is sufficient of itself to establish the fact of injury to the plaintiff's dam, but that the breaking of his dam three times, under all the circumstances to which he testifies, is fit to be considered by the jury, in connection with the other facts, upon the question as to whether defendant's dam caused the alleged injury. It is more than conjectural evidence.

This brings us to the consideration of the principal question in the case: Could the defendant legally obstruct what is known as the flood-channel of the river by erecting a dam across it and thereby force the water back upon the plaintiff's dam to his injury, as already described? We think it is thoroughly well settled that it cannot, but is liable for the damages which resulted proximately from its wrongful act. "Every stream flowing through a country subject to a changeable climate must have periods of high and low water. And it must have not only its ordinary channel, which carries the water at ordinary times, but it must have, also, its flood-channel, to accommodate the water when additional quantities find their way into the stream. The flood-channel of the stream is as much a natural part of it as the ordinary channel. It is provided by nature and it is necessary to the safe discharge of the (increased) volume of water. With this flood-channel no one is permitted to interfere to the injury of other riparian owners." 3 Farnham on Waters, secs. 879 and 880. It is further said, by the same author, that

the courts are very nearly agreed that the flood-channel must be considered as a part of the stream, and no structures or obstruction of any kind can be placed in its bed which will have a tendency to dam the waters back upon the property of another riparian proprietor. The depression or drain which is mentioned in the evidence is a high-water channel of the kind described. It is auxiliary to the main channel, relieving it when the water is high and the swollen stream overflows its banks, the low places on the river acting as natural safety-valves in times of freshets. These depressions or channels being provided by nature for the safe discharge of the large volume of water when the bed of the stream becomes incapable of retaining it, the course which the flood-water is in the habit of taking through them cannot be changed or obstructed to the injury of adjoining private land-owners. Farnham on Waters, sec. 880. The wrong committed in blocking such a channel is of the same character as that of one who closes a natural drain-way on his own land and thereby causes the land of an upper proprietor to be flooded by the backwater.

The principle governing this case has frequently been recognized and applied by this Court. In *Overton v. Sawyer*, 46 N. C., 308, it was held that without reference to the plaintiff's acquisition of an easement by presumption, the defendant had a right to have the water allowed to pass off his land through a natural drain, and when the plaintiff, by means of an embankment across the drain, obstructed the flow of the water and thus interfered with the rights of the defendant, the latter had a cause of action against him for the resulting injury to his property. So in *Pugh v. Wheeler*, 19 N. C., 50, the Court decided that ponding water back upon another's land by any act which impedes its natural flow is a clear and direct invasion of the proprietary interest

in the land itself and is an actionable wrong, unless protected by a grant of the right so to do or by an easement in some other way acquired. It was asserted in *Porter v. Durham,* 74 N. C., 767, as being an elementary principle, which is founded on reason and equity, and common both to the civil and common law, that the owner of land cannot raise any barrier or dyke, even for the better enjoyment of his own property, so as to obstruct the natural drainage of another's land and thus intercept and throw back the water upon it. "An owner may not use his property absolutely as he pleases. His dominion is limited by the maxim, *Sic utere tuo ut alienum non laedas."* Numerous cases to the same effect may be cited. *Shaw v. Etheridge,* 48 N. C., 300; *Hair v. Downing,* 96 N. C., 172; *Wilhelm v. Burleyson,* 106 N. C., 381; *Staton v. Railroad,* 111 N. C., 278; *Rice v. Railroad,* 130 N. C., 375; *Mizell v. McGowan,* 125 N. C., 439.

The principle, in its application to flood-waters, is clearly stated in Jones on Easements, sec. 729, where it is said generally that water, which in times of freshet overflows the bank of a stream and is accustomed to flow over adjacent lowlands in a defined stream, is to be treated as a water-course, rather than as surface-water, and a riparian owner is not allowed to stop the flow by erecting barriers to the injury of another. See, also, 13 Am. and Eng. Enc. (2 Ed.), 687; *Jones v. Railroad,* 45 S. E., 188. In discussing a somewhat similar question in *Staton v. Railroad,* 109 N. C., 337, the Court, by *Merrimon, C. J.,* said: "A party must submit to the natural disadvantages and inconveniences incident to his land, unless he can in some lawful way avoid and rid himself of them. But he has no right, as a general rule, to rid himself of them by shifting them by artificial means to the land of another, when naturally and in the order of things they would not go upon such land or affect it adversely." To

the same purport is the language of the Court in *Mizell v. McGowan,* 120 N. C., 134. "The surface of the earth is naturally uneven, with inequality of elevation. The upper and lower holdings are taken with a knowledge of these natural conditions and the privilege or easement of the upper tenant to carry off the surface-water in its natural course under reasonable limitations, and the subserviency of the lower tenant to this easement, are the natural incidents to the ownership of the soil. The lower surface is doomed by nature to bear the servitude to the superior, and must receive the water that falls on and flows from the latter. The servient tenant cannot complain of this, because *aqua currit et debet currere ut solebat."* If a riparian owner can raise the banks of a stream so as to confine the flood-water and prevent its overflowing his land, without occasioning any injury to the property of others, he may do so, but he must suffer the consequences of any failure in the attempt. Jones on Easements, sec. 729. He cannot set up a barrier to the flow of the water in its natural or accustomed channel if it will result in injury to his neighbors. This Court has said in *Staton v. Railroad,* 111 N. C., 278, that, in adapting his property to any use, the land-owner is subject to the law of adjoining proprietors and to the maxim, *Sic utere tuo ut alienum non laedas.* If in such adaptation the adjacent owner's rights of property are violated, he is entitled to compensation, not so much on the ground of a want of skill or diligence in constructing the work of improvement, as for the reason that by injuring his neighbor's land he has to that extent invaded his right of property. It is the wrong done, and not the manner of doing it, that primarily determines the liability. Applying these principles to the facts of this case, we find that the Court fully and correctly instructed the jury as to the liability of the defendant for obstructing

the flood-channel of the river and ponding the water back upon the plaintiff's lands, leaving it to them to find the facts upon which such liability depended. He also charged the jury upon the question of surface-water as favorably to the defendant as the law permitted. The jury found that there was a flood-channel which had been wrongfully obstructed to the plaintiff's damage, and this finding was made under instructions of the Court based upon evidence and free from any error we have been able to discover.

The fact that other causes may have concurred with the defendant's wrong in producing the injury does not relieve it of liability; for *tort-feasors* contributing to the same injury are jointly and severally liable. *Dillon v. Raleigh,* 124 N. C., 184. "When the injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it was the sole cause. This is one form of a universal principle in the law, that he who contributes to a wrong, either civil or criminal, is answerable as doer. And it is immaterial to this proposition whether that to which he contributes is the violation of a responsible person, or of an irresponsible one, or whether it is a mere inanimate force, or a force in nature, or a disease." Bishop Non-Contract Law (1889), sec. 39; Barrow on Negligence, 25; Cooley on Torts (3 Ed.), p. 1471; *Slater v. Mersereau,* 64 N. Y., 138.

The other exceptions, which are not mentioned in the brief of the defendant's counsel, disclose no reversible error, as we have stated, and require no special comment.

No Error.

CLARK, C. J., did not sit on the hearing of this case.