This is an action brought by plaintiffs against defendants for damages for injury to plaintiffs' land by rendering it unfit for cultivation.
The plaintiff H. Grady Sink (husband of Stella Sink) owns about 65.75 acres of land and a home thereon in Davidson County, N.C. The defendants City of Lexington and Lexington Utility Commission (see ch. 22, Private Laws of 1935), under legislative powers, maintains a water system and furnishes the inhabitants of the city of Lexington with water for pay. During the latter part of 1935 and the first part of 1936 the defendants constructed a dam across Leonard's Creek and impounded the waters therein, which said impounded waters cover approximately 65 acres of its land. The back water of the lake reaches to within 600 feet of plaintiffs' land, which is above the lake — 10.6 acres of plaintiffs' corn and meadow land, etc., it is alleged by plaintiffs is destroyed for farming purposes.
Grady Sink, the plaintiff, testified, in part: "I cultivated about two or two and a half acres of that land in corn previous to the building of the dam, and mowed around 6 or 6 1/2 in hay, and pastured the rest of it. That bottom in reference to fertility for hay and other crops was as good as you could find anywhere. I think I grew as good corn there as anybody ever grew on land, and my meadow was good, and I had good crops every year. I never missed mowing two crops of hay off of it since I have had it until since the lake has been impounded. . . . Just previous to the building of the dam I would say I raised 70 to 75 bushels of corn per acre. I would assume the average hay crop there just previous to the building of the dam, in the bottom to be something like four tons to the acre — be two tons a crop. I cut that hay twice per year. With reference to the difference in the condition of my bottom land now and just previous to the building of this dam by the city, at that time I could mow every foot of it and cultivate it, and at the present time it is impossible to do it. As to how it is now, all this that has been pointed out here is standing in water, lots of it knee deep, and the rest of it you would mire down in it if you would get out in it. It has always been so it could easily be drained of water, have never known it to be otherwise, except since the water has been impounded in the lake, and at the present time you cannot do it. The water is too high to drain it. I quit cultivating my bottom, on account of the condition of the water being in there that I have just described, last year. The fall crop was the last crop, the fall of 1937. . . . I would say the difference in the depth of the creek in the middle of my bottom now and immediately before the dam was built is about 2 1/2 feet. With reference to the depth of the creek as it comes through the southern portion of my land now as compared with immediately before the dam was built, I think as much as 3 1/2 feet piled up there. . . . As to the condition of that land now *Page 550 
as compared with immediately before the dam was built, it is much wetter than it was — soggy and wet. There are no ditches on it. Before the dam was built it was naturally dry there. My ditches leading across my property into Leonard's Creek immediately before the dam was built, right at the creek were 5 feet deep. With reference to where the ditches were that were 5 feet deep that came into Leonard's Creek, this ditch here (indicating) came all the way right in around here, and right into the creek; and right down at the creek when it was cleaned out you could just barely see out of it. That is the way it was, and now it is filled up to the top just about. The blind ditches, the water is covered up over them now, and used to they would drain the water from back up in there and they can't now. The sand and silt has filled up a whole lot. When the water from Leonard's Creek that drains through my place hits the back waters of the lake, it naturally stops, and the silt and sand stops, too. It continually fills up. It keeps just piling up on top of it."
Notice of claim was duly presented to the city of Lexington (ch. 70, Private Laws 1933). The plaintiffs introduced several witnesses who corroborated H. Grady Sink's testimony. The defendants denied liability. Judgment of nonsuit was rendered for defendants and plaintiffs excepted, assigned error and appealed to the Supreme Court.
At the close of plaintiffs' evidence, the defendants made a motion in the court below for judgment as in case of nonsuit (C. S., 567). The motion was granted and in this we think there was error. We think the evidence was sufficient to be submitted to the jury. It is well settled that a fact can be proved by direct and circumstantial evidence.
In Smith v. Morganton, 187 N.C. 801 (802-3), it is said: "Farnham says that a comprehensive statement of the rights of a riparian owner is that he has a right to have the stream remain in place and to flow as nature directs, and to make such use of the flowing water as he can make without materially interfering with the equal rights of the owners above and below him on the stream. Furthermore, the right to have a natural water course continue its physical existence upon one's property is as much property as is the right to have the hills and forests remain in place, and while there is no property right in any particular particle of water or in all of them put together, a riparian proprietor has the right of their flow past his lands for ordinary domestic, manufacturing, and other lawful purposes, without injurious or prejudicial interference by an upper proprietor. Waters and Water Rights, secs. 461, 462. This *Page 551 
doctrine finds support in our decisions which hold that a riparian proprietor is entitled to the natural flow of a stream running through or along his land in its accustomed channel, undiminished in quantity and unimpaired in quality, except as may be occasioned by the reasonable use of the water by other like proprietors," citing numerous authorities.
We think Teseneer v. Mills Co., 209 N.C. 615, similar to the present case, nor is Dunlap v. Light Co., 212 N.C. 814, contrary.
For the reasons given, the judgment of the court below is
Reversed.