FOREST CITY COTTON COMPANY ET AL. v. HENRIETTA MILLS.

(Filed 19 March, 1941.)

1. **Trespass § 1a: Waters and Watercourses § 7—Allegations and evidence held insufficient to establish trespass resulting from operation of milldam.**

   Allegations and evidence to the effect that defendant's milldam caused the flow of the water in the river above the dam to be impeded, resulting in the deposit of sand in the river bed, which in turn impeded the flow of the water in a tributary creek flowing through plaintiff's land, resulting in the deposit of sand and other debris in the creek bed so that plaintiff's land could not be properly drained, without allegation or evidence that the dam ponded water back upon plaintiff's land, is insufficient to show a trespass and, plaintiff having abandoned its cause of action for negligence in the operation of the milldam, the verdict of the jury in defendant's favor under instructions to answer the issue of liability in the negative if the jury should find that the defendant made no unreasonable use of its riparian rights and had not taken in whole or in part any of plaintiff's land, will be upheld.

2. **Appeal and Error § 43—**

   Under the rules of the Court relating to petitions to rehear, the Supreme Court can correct an inadvertence in a former decision in the case without the necessity of another trial in the Superior Court. Rule of Practice in the Supreme Court, No. 44.

   CLARKSON, J., dissenting.

   SEAWELL, J., joins in dissent.

---

COTTON CO. *v.* HENRIETTA MILLS.

---

PETITION to rehear this case, reported in 218 N. C., 294, 10 S. E. (2d), 806.

    *Hamrick & Hamrick and Paul Boucher for plaintiff.*
    *C. O. Ridings and Oscar J. Mooneyham for defendant.*

STACY, C. J. As was said on the rehearing of *Peele v. Powell,* 161 N. C., 50, 76 S. E., 698, there is no division in the Court as to the correctness of the propositions of law first announced herein, but upon a fuller consideration of the record, the conclusion is now reached that the judgment of the Superior Court should be upheld.

The plaintiff's land is on Puzzle Creek, a tributary of Second Broad River. It is eight miles above the defendant's milldam. It is not alleged that the waters of the river, or of the creek, were ponded back upon plaintiff's land, thus creating a trespass as in the cases originally cited and relied upon, see *Clark v. Guano Co.,* 144 N. C., 64, 56 S. E., 858, but the allegation is that the defendant's dam has caused the flow of the water in the river above the dam to be impeded and slowed up, and caused sand carried by the river to be deposited in the river bed, which in turn has impeded and slowed up the flow of Puzzle Creek, and caused sand and other debris carried by the creek to be deposited in the creek bed until "it is now impossible to drain plaintiff's land." See *Sink v. Lexington,* 214 N. C., 548, 200 S. E., 4.

With the allegations of negligence eliminated on the hearing and the plaintiff stipulating "this case may be tried upon the theory of permanent damages," it would seem that the validity of the trial should be sustained. The jury, after hearing the evidence and viewing the premises, answered the issue of liability in favor of the defendant.

Our first impression is not confirmed by the above portions of the record and a further critical re-examination of the transcript. Fortunately the rule permits a correction of the inadvertence without the necessity of another trial in the Superior Court. Rule 44 of the Rules of Practice, 213 N. C., 832; *Carruthers v. R. R.,* 218 N. C., 377.

    Petition allowed.

CLARKSON, J., dissenting: The plaintiff owns several acres of land on Puzzle Creek. It had on this land a large number of very valuable magnolia trees and other nursery plants. Puzzle Creek runs into Second Broad River, across which the defendant has constructed and now maintains a dam. This dam caused the velocity of the water in the river to be considerably reduced, and therefore the sand which the river had formerly carried was deposited in the bottom of the stream, thereby gradually raising the bed of the river. The raising of the bed of the

river materially reduced the fall of Puzzle Creek, which in turn greatly lessened the speed of that stream. As the velocity of the creek was reduced, sand, silt, etc., which had formerly been carried by the creek was deposited on the bottom; causing the bed of the stream to gradually fill up until finally—a short time ago—the bed of the stream became so high that it was impossible to drain the plaintiff's land and consequently it became sobbed and worthless. The magnolia trees and other nursery plants were all killed by reason of the sobbing of the land which was caused by the building up of the bed of the creek, which was in turn caused by the dam in the river. Plaintiff sued the defendant for the injury to its land and for the value of the magnolia trees and other nursery plants which were killed.

The issue submitted to the jury was correct: (2) "Has the defendant, by the construction and operation of its dam, wrongfully caused the lands of the plaintiff to become flooded or sobbed, as alleged in the complaint?"

The court below charged the jury, to which exceptions and assignments of error were duly made, as follows:

"A riparian landowner is entitled to have the waters of a stream to continue to flow by his lands in its usual channel and in its normal quantity and any unreasonable invasion of these rights by another riparian landowner gives rise to a cause of action proximately caused thereby.

"The court further charges you that the right of a riparian landowner to the use of the water flowing by his premises in a natural stream and as an incident to the ownership of the soil and to have it flow by his lands in its usual channel and in its normal quantity has been recognized in this State for over a century. This does not mean that a riparian landowner on a nonnavigable stream actually owns the running water, but he has the reasonable use of it so long as he does not substantially and unreasonably invade the rights of other riparian owners.

"The court further instructs you that *in determining the right of an upper riparian owner, the question is whether the lower riparian proprietor is engaged in a reasonable exercise of his right to use the stream as it flows by, through or to his lands,* whether with or without retaining the water for a time or obstructing temporarily the accustomed flow.

"Every riparian landowner has a property right to the reasonable use of running water for manufacturing purposes as well as for domestic and agricultural purposes conformable to the uses and needs of the community, qualified only by the requirement that it must be enjoyed with reference to similar rights of other riparian owners, above and below.

"The court further instructs you as to what constitutes a reasonable use is a question of fact for the jury to determine, having due regard to the subject matter and the use; the occasion and manner of its appli-

cation; its object and extent and necessity; the nature and size of the stream; the kind of business to which it is subservient; the importance and necessity of the use claimed by one party and the extent of the injury caused by it to the other party.

"So, gentlemen of the jury, a lower riparian owner may not erect a dam or operate a dam or a plant and take or appropriate the property of an upper riparian landowner in whole or in part, without paying to it just compensation for the land taken or damage or both, and this is true, regardless of whether the lower riparian owner's use of the water is reasonable or not.

"Now, gentlemen of the jury, the plaintiff does not contend in this case that the defendant's pond or lake or reservoir actually floods its lands, but contends that the defendant in the construction and unreasonable maintenance of its dam has proximately caused the velocity of the water in Broad River to be considerably reduced.

"The court charges you that if you should find by the greater weight of the evidence that the defendant in the operation and construction of its dam at Caroleen in the exercise of its riparian rights made an unreasonable use of same as defined by the court, thereby proximately causing the bed of the river to fill up with sand by reason of reducing the velocity of the water contained therein, and that this filling up of the river with sand, if you find it has filled up, proximately caused the fall in Puzzle Creek to be reduced and the bed of the creek to fill up, if you find it has filled up, proximately causing the water in the creek to overflow, flood and sob plaintiff's lands, proximately causing damages to said lands, you would answer the second issue Yes.

"The court instructs you that if you should find from the evidence in this case that the defendant in the construction, operation and maintenance of its dam at Caroleen, North Carolina, has not made any unreasonable use of its riparian rights, as the court has defined the law to you and explained what unreasonable use means, or if reasonable, has not taken in whole or in part any of plaintiff's land as the court has heretofore instructed you, then you would answer the second issue No. . . ."

The trial court, by giving the instructions set out above, committed reversible error. because anyone who constructs or maintains a dam which causes the property of an upper riparian owner to become flooded or sobbed is liable to such owner for any damage resulting from said flooding or sobbing regardless of whether the construction or operation of the dam was a reasonable or unreasonable use of the water, or stream.

In *Cagle v. Parker*, 97 N. C., 271 (1887), *Davis, J.,* writing for the Court, says at p. 275: "If, by the increased height of the dam, injury resulted to the plaintiff's land, by sobbing and destroying its value, though not actually overflowed, he was entitled to damages. It was not

necessary that the land should be actually overflowed and covered by the water. If so ponded back as to sob the soil and render its drainage impossible, the plaintiff has a right to damages for the injury sustained, and he was entitled to the issue which was refused, without deciding that the instrument set out in the answer was in any way binding upon the plaintiff." 67 C. J., p. 728, par. 69 (2); 27 R. C. L., p. 1196, par. 113.

In *Clark v. Guano Co.,* 144 N. C., 64 (75-76), it is stated: "The principle governing this case has frequently been recognized and applied by this Court. In *Overton v. Sawyer,* 46 N. C., 308, it was held that without reference to the plaintiff's acquisition of an easement by presumption, the defendant had a right to have the water allowed to pass off his land through a natural drain, and when the plaintiff, by means of an embankment across the drain, obstructed the flow of the water and thus interfered with the rights of the defendant, the latter had a cause of action against him for the resulting injury to his property. So in *Pugh v. Wheeler,* 19 N. C., 50, the Court decided that ponding water back upon another's land by any act which impedes its natural flow is a clear and direct invasion of the proprietary interest in the land itself and is an actionable wrong, unless protected by a grant of the right so to do or by an easement in some other way acquired. It was asserted in *Porter v. Durham,* 74 N. C., 767, as being an elementary principle, which is founded on reason and equity, and common both to the civil and common law, that the owner of land cannot raise any barrier or dyke, even for better enjoyment of his own property, so as to obstruct the natural drainage of another's land and thus intercept and throw back the water upon it. 'An owner may not use his property absolutely as he pleases. His dominion is limited by the maxim, *Sic utere tuo ut alienum non laedas.'*" The principle has been consistently followed by this Court. *Bryan v. Burnett,* 47 N. C., 305; *Wright v. Stowe,* 49 N. C., 516; *Little v. Stanback,* 63 N. C., 285; *Cline v. Baker,* 118 N. C., 780; *Chaffin v. Mfg. Co.,* 135 N. C., 95.

The error of the court below came from what was said in the decision in the case of *Dunlap v. Light Co.,* 212 N. C., 814. Dunlap owned land *below* the dam and the reasonable use doctrine was applied, it is not like plaintiff who owned land *above* the dam.

The reasonable use doctrine has no application to this case, as the *Dunlap case, supra,* concerned a lower riparian owner. Any backing water on plaintiff's land that materially effected it was a trespass for which nominal or other damages may be recovered. The confusion in the charge of the court below was caused by applying the law of a lower riparian owner to an upper riparian owner, as is the present case. The court below, as is seen, correctly charged the law in reference to an

upper riparian owner and also charged the reasonable use doctrine as applied to an upper riparian owner. The charge was conflicting and misled the jury.

In *May v. Grove,* 195 N. C., 235 (237), citing a wealth of authorities, it is said: "In *Edwards v. R. R.,* 132 N. C., at p. 101; it is held: 'It is well settled that when there are conflicting instructions upon a material point a new trial must be granted, as the jury are not supposed to be able to determine when the judge states the law correctly and when incorrectly.' "

In *Cotton Co. v. Henrietta Mills,* 218 N. C., 294, *Stacy, C. J.,* for a unanimous Court, said: "The trial court seems to have fallen into error in instructing the jury to answer the issue of liability 'No' if they should find that the defendant 'has not made any unreasonable use of its riparian rights. . . . or, if reasonable, has not taken in whole or in part any of plaintiff's land.' The plaintiff had abandoned its allegations of negligence and was proceeding only in trespass. It was, therefore, entitled to have the cause submitted to the jury on the theory of trespass without reference to the allegations of negligence or wrongful taking. *Cline v. Baker,* 118 N. C., 780, 24 S. E., 516; *Chaffin v. Mfg. Co.,* 135 N. C., 95, 47 S. E., 226. The challenged instruction placed too heavy a burden on the plaintiff. In trespass, the plaintiff is entitled to recover nominal damages, if he only show that the defendant broke his close. *Lee v. Stewart, ante,* 287; *Chaffin v. Mfg. Co., supra; Little v. Stanback,* 63 N. C., 285."

I think the original opinion above quoted correct and the law, and the change on the rehearing in the present case incorrect and not the law. The evidence in this case was the same as in *Sink v. Lexington,* 214 N. C., 548 (550): "The sand and silt has filled up a whole lot. When the water from Leonard's Creek that drains through my place hits the back waters of the lake, it naturally stops, and the silt and sand stops, too. It continually fills up. It keeps just piling up on top of it." In that case we said that the question was for a jury.

The court below thought the evidence sufficient to be submitted to the jury. Plaintiff's evidence in abundance is to the effect that plaintiff's land was damaged. John Clemmer, a witness for plaintiff, testified, in part: "From my observation Puzzle Creek and the territory above the river and this property, I have an opinion satisfactory to myself as to what has caused it to fill up. My opinion is that the dam kills the water. It don't have the flow it once had and sand is building up. . . . It stops the flow of the water, and, of course, the sand and other stuff comes in and keeps backing up the stream. This is the effect on the bed of the stream above of causing it to fill, and it is my opinion that it backs on up the stream. That is my opinion of what has happened at this particular land."

Howard Miller, a civil engineer and witness for plaintiff, who made a survey of the situation, testified: "My opinion is that the stream has not sufficient velocity to clean its channel at present. I observed the condition of the bed of the river and creek all the way up with reference as to whether it was cleaning its channel. I have had experience in observing other streams with reference to velocity and cleaning out the channel. When a stream does not have velocity sufficient to clean its channel it silts up. This causes the bed of the channel to silt and fills it up and in time it overflows the bank. The bed of the stream and creek are filled up; there was not any land in cultivation up and down the river. This is for the whole eight miles. I observed the bank of the river and creek all the way up to Forest City Cotton Company's land; from my observation I have an opinion satisfactory to myself as to what caused Puzzle Creek to fill up. . . . A. My opinion is that this silt raised and elevated the stream bed in time has worked up the river and up to Puzzle Creek, and you find the fills will average three and a half feet most of the way up—about two feet the first two miles. This silt was deposited up the river and up Puzzle Creek. This still water—when you get a freshet bringing down silt and dumping it here in the still water, it begins to build up and that is the cause of the overflow up river and the creek. That is caused by the construction and maintenance of the dam."

G. B. Hyder, a witness for plaintiff, testified, in part: "I am in the nursery business; have been in the nursery business eighteen years. I have been down and looked at the nursery in question on Puzzle Creek—the magnolia trees and shrubbery there. I went down there three or four weeks ago. I observed the magnolia trees. They are practically dead now. . . . I observed the condition of the land where those trees were. It was wet. I could see water marks on the trees where water had stood. I have an opinion satisfactory to myself as to what caused those magnolia trees to die. My opinion is that the water killed them, the wet soil."

I do not think the petition for rehearing should be allowed, for the reasons given. Since one law is applied to what happens below the dam and another law to what happens above the dam, it is as if in assault it made a difference in law whether the victim is hit on the nose or kicked in the rear.

SEAWELL, J., joins in this opinion.