### J. W. JACKSON AND WIFE v. EMMA KEARNS.

(Filed 9 May, 1923.)

**1. Waters—Surface Waters—Diversion—Damages.**

The upper proprietor has no right to collect the surface water on his own land and divert it from its natural flow, and discharge it upon the lands of the lower proprietor, to his damage.

**2. Same—Easements—Judgments—Estoppel.**

A judgment in a former action against the upper proprietor of lands for damages caused to the land and crops of the lower proprietor by the breaking in a freshet of a dam placed by the upper proprietor, without authority, washing holes in the land, does not create a permanent easement in the lands, or estop the lower proprietor in his action to recover damages caused by the breach in the dam from a later freshet by reason of the continuance of his unlawful act in not having repaired the dam since the former judgment.

**3. Same—Tenants in Common.**

A recovery by one tenant in common of damages to his undivided interest in the lands caused by the unlawful diversion of water by the upper proprietor on his own lands, does not estop the other tenant in common from recovering the damages he has also sustained by reason of the unlawful act.

APPEAL by plaintiffs from *Finley, J.,* at December Term, 1922, of RANDOLPH.

This was an action to recover damages for injury alleged to have accrued from a cross-dam or wall from the creek to the highlands maintained in a defective condition by the defendant on her lands on the east

27—185

side of Carraway Creek in Randolph County above and adjoining the lands of the plaintiffs. It was in evidence that when large freshets come, water is impounded by said wall and on account of breaches therein, the water is diverted through said breaches and washes away and injures the plaintiffs' land. The evidence for the plaintiffs was that during a big freshet in the creek in June, 1919, the plaintiffs' crops and land were damaged thereby to the extent of $1,250. There had been similar damage to the plaintiffs' land in 1913, and an action therefor in which the plaintiffs had recovered for the damages sustained thereby $500. The court held that plaintiffs could not recover in this action because permanent damages had been adjudged and assessed in the first action for the damages sustained from the freshet in 1913, and were therefore estopped to bring this action, and entered judgment accordingly, from which judgment the plaintiffs appealed.

*Brittain & Brittain and J. A. Spence for plaintiffs.*
*H. M. Robins and Hammer & Moser for defendant.*

CLARK, C. J. It is well settled in this State that the upper proprietor has no right to collect the water and divert it from its natural flow and discharge it upon the land of the lower proprietor. *Jenkins v. R. R.,* 110 N. C., 443, and citations thereto in Anno. Ed. The sole question presented in this case is whether the judge properly held that the judgment for damages in a former action sustained from the diversion of water in the freshet of 1913 whereby the plaintiff's land and crop were injured, was an estoppel upon the plaintiffs to maintain this action for the damages resulting in 1919 by the natural flow of the water being diverted through the breaches created by the freshet of 1913, which had remained unrepaired. That action was brought by J. W. Jackson alone. The present action is brought by J. W. Jackson and his wife, M. M. Jackson, it being shown that she is owner of a half interest in said land as tenant in common. It also appears from an examination of the complaint that the action instituted for the damages sustained by J. W. Jackson from the injury to his land caused by the breaking of defendant's dam in 1913 was the washing of a great hole in the defendant's land and washing off the soil from other parts of the land, and asked judgment for this damage, and that the defendant, the upper proprietor, should repair said breaches or tear down the wall so that the plaintiff's land would receive the natural flow of the water only. The breaches have not been repaired.

The plaintiff contends that it was not intended by that litigation to give the defendant therein an easement to maintain the wall nor to exempt the defendant from liability for this subsequent washing out of new holes and carrying away the soil by the freshet of 1919, or from all

subsequent freshets in which the impeding of the natural flow of the water by the defendant's dam could cause injury to the plaintiff's property. By reference to the judgment by default granted by Judge Justice at March Term, 1917, it was adjudged that "the defendant wrongfully and unlawfully permitted the dam holding said water to break and caused the water to pour over the plaintiff's land and damage the same by washing the soil and other parts of said land away and making holes therein." At July Term, 1918, the inquiry was instituted before Judge Long, and the issue submitted as above stated, "What damages is the plaintiff entitled to recover, permanent or otherwise, against the defendant for and on account of the maintenance of the dam, as alleged in the complaint?"

It is apparent from this that the damages alleged in the complaint as aforesaid were as recited in the judgment by default that the defendant had "wrongfully and unlawfully diverted the water from Carraway Creek, and wrongfully and unlawfully permitted the dam holding said water to break and cause the water to pour over the plaintiff's land and damage the same by washing the soil and other parts of said land away and make holes therein." The damages sought in that action were the permanent damages for washing away the soil and making the holes by the freshet of 1913 and cannot reasonably be construed to have been the permanent damages to the plaintiff's land by reason of its depreciation which was given if the judgment gave a permanent easement.

In short, the judgment of July, 1918, obtained upon the default judgment of 1917, was for the damages, permanent or otherwise, caused by the unlawful diversion of the water making holes and otherwise washing away the soil on the plaintiff's land. It did not create a permanent easement in favor of the defendant to maintain the dam and thereby forever possess the right to divert the water making other holes and washing off the soil of the plaintiff's land for all time to come.

It was stated on the argument here, and not denied, that the plaintiffs' land was worth from $200 to $300 an acre, and it is not reasonable to suppose that $500 was intended to cover the damages which would be sustained thereafter by the maintenance of the dam in future, especially when the cause of action in the former suit was for the diversion of the water by the dam and the failure to maintain it in good condition whereby breaches were made and the plaintiffs' land injured thereby in the manner stated.

The facts of this case are very similar to those in *Clark v. Guano Co.*, 144 N. C., 74. That case cites with approval, among many others, *Porter v. Durham*, 74 N. C., 767, as asserting the elementary principle that the owner of land cannot raise any barrier or dike even for the better enjoyment of his own property, so as to obstruct the natural

drainage of another's land or divert water thereon, and says, page 77, that the riparian owner "cannot set up a barrier to the flow of water in its natural or accustomed channel if it will result in injury to his neighbor."

In *Ridley v. R. R.,* 118 N. C., 996, it was held, probably for the first time in this State, that in an action against a railroad company which had constructed its road under lawful authority, not being a nuisance but a permanent right of way, the plaintiff or defendant could elect to have permanent damages assessed upon proper averment on the trial and proof thereof, and the subsequent statute, now C. S., 440, subsec. 2, so authorized the assessment for permanent damages in such cases.   It was further held in *Ridley v. R. R., supra,* that where the plaintiff in an action against a railroad in such case had the damages apportioned without any allegation of prospective damages, the judgment would not be a bar to actions for future damages, and either party in such subsequent suits can demand that both present and prospective damages be assessed.

The assessment of permanent damages was made imperative by the statute, now C. S., 440, subsec. 2, but as to railroads only.   *Barclift v. R. R.,* 175 N. C., 116.   Whether it can be allowed in other cases is a matter fully discussed by *Walker, J.,* in *Barcliff v. R. R.,* 176 N. C., 41, where it is held that even where the plaintiff is not entitled to have the permanent damages assessed as a matter of right, if that question is clearly presented and passed on it will confer an easement.   In *Webb v. Chemical Co.,* 170 N. C., 663, the Court held that, except in actions against railroads for damages caused by the right of way, permanent damages can be assessed as a right only "when the source of the injury is permanent in its nature, and will continue to be productive of injury independent of any subsequent wrongful act."

In the case at bar the damages obtained in the judgment by default in 1917, and the amount ascertained upon the inquiry in the trial in 1918, were not of such nature.   They were not for the erection of a dam and injury sustained by the diversion of water caused thereby, for there was none alleged or shown, but the damages recovered were for failure to maintain the dam whereby through the breaches made therein the water had gouged out holes and washed away some of the surface soil.   This cause of action was, in the language of the decision in *Webb v. Chemical Co., supra,* "not permanent in its nature, nor would continue to be productive of injury independent of any subsequent wrongful act."

The defendant, therefore, did not obtain, by reason of the former judgment, any easement to maintain the dam.

The defendant in that case could not have had permanent damages assessed as a matter of right and upon the pleading and the judgment it

is clear that no damages were assessed by reason of the erection of the dam itself, and the defendant has not acquired an easement to maintain such dam.

In addition, as already stated, only one of the tenants in common was a party to the former action. There was error in holding that the former action was an estoppel in this action for the damages sustained by the freshet of 1919, and there must be a

New trial.