IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-229

Filed 6 May 2026

Yancey County, No. 23CVD000141-990

DARLENE DAVIS CASSIDA, Plaintiff,

v.

GUY MARSHALL CASSIDA, Defendant.

Appeal by Plaintiff from Order entered 15 August 2024 by Judge Rebecca Eggers-Gryder in Yancey County District Court. Heard in the Court of Appeals 11 September 2025.

> *King Law Offices, PC, by Morgan S. Schriner and Patrick K. Bryan, and Blue Ridge Family Law Group, by Krista S. Peace, for Plaintiff-Appellant.*
>
> *Ward and Smith, P.A., by Alexander C. Dale and Melody J. King, for Defendant-Appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Darlene Cassida (Plaintiff) appeals from an Order granting Defendant Guy Cassida's Motion for Judgment on the Pleadings and dismissing with prejudice her breach of contract action alleging Defendant failed to pay alimony pursuant to the parties' Separation Agreement. The Record before us tends to reflect the following:

Plaintiff and Defendant married in December 1990. In 2017, they separated. The parties executed a Separation Agreement in October 2018 and were divorced on 18 November 2018. The Separation Agreement was not incorporated into the divorce

judgment.

The Separation Agreement required Defendant pay Plaintiff monthly alimony for ten years (the Alimony Provision):

> 4. SUPPORT FOR THE SPOUSE: The [Defendant] shall pay the [Plaintiff] alimony in the monthly amount of $1,000.00 per month beginning the fifteenth (15th) day of the month after the execution of this Agreement with a like sum due on the 15th day of each month thereafter for a period of 10 years (120 months), said payments to be made either directly to [Plaintiff] or in an account designated by [Plaintiff].
>
> In the event alimony is not paid, please see Section 9 hereinbelow as to the requirement of reimbursement of costs / legal fees if an action is filed to enforce said obligation.

In Section 9, the Separation Agreement outlined an enforcement procedure in the event of noncompliance (the Enforcement Provision):

> 9. ENFORCEMENT AND AGREEMENT: The parties agree that in the event there is non-compliance with any of the marital provisions of this Agreement, the party so complying may initiate an action in the District Court of North Carolina asking for specific performance of the terms and conditions so sought to be enforced. The non-complying spouse shall be responsible to the complying spouse for any and all expenses incurred by the complying spouse in the attempt to obtain specific performance. Said costs and expenses will include attorney fees for the complying spouse.

### The First Lawsuit

Plaintiff sued Defendant in July 2019 (the First Lawsuit).[1] In her Complaint,

---

[1] The file-stamped date on Plaintiff's 2019 Complaint is illegible. Other materials in the Record suggest this Complaint was filed in July 2019. In their appellate briefs, the parties both indicated this

Plaintiff stated "[t]his is an action in which Plaintiff seeks Specific Performance for Breach of Contract by the Defendant." Plaintiff asserted the Separation Agreement was a "legally binding contract" Defendant had breached by not "consistently" making alimony payments as required by the Alimony Provision. Due to Defendant's alleged noncompliance, Plaintiff asserted Defendant owed her $2,100 in unpaid alimony "at the time of the Plaintiff's verification of this Complaint[.]"[2] In her prayer for relief, Plaintiff requested the trial court "order Specific Performance of those provisions of the Separation Agreement for which the Defendant has not complied." Plaintiff did not request money damages as an alternative remedy to specific performance.

On 17 December 2019, the trial court held a hearing on Plaintiff's Complaint.[3] Defendant testified and introduced documentary evidence about his financial affairs. Defendant's evidence included the parties' 2018 joint tax return. Additionally, Defendant argued the Separation Agreement should be "set aside" as "procedurally unconscionable," because, *inter alia*, Plaintiff allegedly "coerced" him into signing it.

The trial court entered a written Order on 12 February 2020 (the 2020 Order). The 2020 Order rejected Defendant's request to set aside the Separation Agreement as procedurally unconscionable. Instead, the trial court found the Separation

---

Complaint was filed in July 2019, but neither party specifies a date. We therefore refer to Plaintiff's Complaint in the First Lawsuit as "the July 2019 Complaint."

[2] Plaintiff's Complaint was verified on 17 June 2019.

[3] The Record does not contain a transcript of the 17 December 2019 hearing. It only includes the trial court's resulting Order entered 12 February 2020.

Agreement to be "procedurally fair." Thus, as a matter of law, the trial court concluded it "ha[d] no authority to modify a separation agreement, and therefore, the Defendant's request that the [parties'] [S]eparation [A]greement be set aside and deemed null and void should be denied."

As to Plaintiff's request for specific performance, the trial court found Plaintiff had "complied with her portions of the [Separation] [A]greement[.]" It also found "Defendant ha[d] failed to pay alimony since April 2019." However, upon Findings about Defendant's income, expenses, and assets, the trial court found "in all probability, [Defendant] would be forced to file for bankruptcy" if he were ordered to pay Plaintiff $1,000 per month in alimony pursuant to the Separation Agreement.[4] Therefore, the trial court found the "totality of the evidence" had established Defendant "d[id] not have the financial ability to comply with the [A]limony

---

[4] The trial court also found "Defendant ha[d] not depressed his income or depleted his assets to avoid payment" of alimony. This Finding is relevant because "when a defendant has offered evidence tending to show he is unable to fulfill his obligations under a separation agreement . . . the trial judge must make findings of fact concerning the defendant's ability to carry out the terms of the agreement before ordering specific performance." *Cavenaugh v. Cavenaugh*, 317 N.C. 652, 657-58, 347 S.E.2d 19, 23 (1986) (citations omitted). Alternatively, "[i]n the absence of a finding that the defendant is able to perform a separation agreement [obligation], the trial court may nonetheless order specific performance if it can find that the defendant 'has deliberately depressed his income or dissipated his resources.'" *Condellone v. Condellone*, 129 N.C. App. 675, 682, 501 S.E.2d 690, 695-96 (1998) (quoting *Cavenaugh*, 317 N.C. at 658, 347 S.E.2d at 23).

Here, Defendant introduced evidence of his financial affairs tending to show he could not perform the Alimony Provision. Thus, the trial court properly made Findings about Defendant's inability to perform the alimony payments. *See Cavenaugh*, 317 N.C. at 657-58, 347 S.E.2d at 23. Further, the trial court found Defendant had not depressed his income or depleted his assets to avoid the alimony payments. Therefore, the alternate ground on which the trial court could have ordered specific performance did not exist. *See Condellone*, 129 N.C. App. at 682, 501 S.E.2d at 695-96.

[P]rovision of the [Separation] Agreement."[5] Thus, the trial court concluded Plaintiff had not satisfied her "burden of proving Defendant's ability to perform," a required element to establish entitlement to the specific performance remedy. Consequently, the trial court ruled Plaintiff was "not entitled to specific performance requiring the payment of $1,000.00 per month in alimony; nor, as of this point in time, specific performance as to the life insurance policy."

The 2020 Order thereby denied both Plaintiff's "request for Specific Performance" and Defendant's "request for modification of the [S]eparation [A]greement[.]" Neither party appealed from the 2020 Order.

<u>The Second Lawsuit</u>

Plaintiff sued Defendant again in 2023 (the Second Lawsuit). Plaintiff filed an initial complaint on 6 June 2023 and an Amended Complaint on 25 August 2023. As in the First Lawsuit, Plaintiff's Amended Complaint alleged Defendant had breached the parties' Separation Agreement by failing to pay alimony. This time, however, Plaintiff did not request specific performance of the Alimony Provision. She instead sought $36,000 in money damages for Defendant's nonpayment of alimony since April 2019.

Defendant filed an Answer on 23 October 2023. He made a Motion for Leave to File an Amended Answer on 13 May 2024, which the trial court granted. In his

---

[5] We express no opinion on whether the trial court properly analyzed Defendant's "ability to perform" as part of its inquiry into whether Plaintiff demonstrated entitlement to specific performance.

Amended Answer, Defendant raised a defense alleging "[a]ll or some of Plaintiff's claims or damages are barred by the doctrine of res judicata . . . because they are an attempt to relitigate issues or facts decided, pursued, or abandoned" during the First Lawsuit, which reached a final judgment in the form of the 2020 Order denying specific performance.

Defendant filed a Motion for Judgment on the Pleadings on 12 July 2024 and a supporting Memorandum of Law on 1 August 2024.[6] In this Motion, building on the defenses raised in his Amended Answer, Defendant contended the "doctrine of merger and res judicata" barred Plaintiff's pursuit of money damages for his alleged nonpayment of alimony. Defendant further asserted the 2020 Order had "reliev[ed] [him] of the alimony obligation by denying specific performance on the grounds that Defendant did not have the ability to comply with the [A]limony Provision" and argued the 2020 Order "applie[d] retroactively and prospectively to the current date and continues in effect." According to Defendant, Plaintiff could not "now relitigate, over four years later, a ruling which she is unhappy with yet failed to appeal" at the time. Defendant's Motion concluded by stating the trial court, due to res judicata and merger, "cannot now enter a judgment for money damages as a way of circumventing the 2020 Order."

On 5 August 2024, the trial court held a hearing on Defendant's Motion. As to

---

[6] Defendant labeled this Motion alternatively as a Motion for Summary Judgment. The trial court treated it as a Motion for Judgment on the Pleadings.

the issue of Defendant's duty to pay alimony under the Separation Agreement, Plaintiff argued the 2020 Order "does not say the Defendant doesn't have to pay [alimony]" or that "Defendant is relieved of all his contractual obligations." Plaintiff reasoned the 2020 Order did not cause the Separation Agreement to "go poof," as such an outcome would "fly in the face of everything we know about contract law." Plaintiff further stated her objective was to "get a money judgment against [Defendant]" and "try to execute" it.

At this hearing, Plaintiff also argued res judicata did not preclude her Second Lawsuit. Plaintiff stated the decisive issue in the First Lawsuit was her failure to prove Defendant's "ability to perform" his alimony obligation. Thus, Plaintiff contended the 2020 Order had only established she was not entitled to specific performance at the time of the prior litigation. Additionally, Plaintiff argued it would be an "injustice" for the trial court to apply these preclusion doctrines in a way that would give her "no ability to seek any claim for something that [the parties] freely contracted for" in the Separation Agreement. Plaintiff again emphasized the 2020 Order was based on the finding "[Defendant] couldn't specifically perform at that time," which Plaintiff did not intend to "relitigate" in the present case. Thus, Plaintiff asked the trial court to deny Defendant's Motion.

In an Order entered 15 August 2024, the trial court granted Defendant's Motion for Judgment on the Pleadings (the 2024 Order). First, in keeping with the prior trial court's Conclusion in the 2020 Order, the trial court found the parties'

Separation Agreement "is an unincorporated agreement and is therefore a private contract not subject to modification by this Court."

In pertinent part, the trial court made the following Conclusions of Law:

5. The Plaintiff had a full and fair opportunity to litigate all issues, including a breach of contract claim seeking money damages in the 2019 Lawsuit, but failed to do so. Merger requires all damages resulting from a <u>single wrong</u> or cause of action to be recovered in one lawsuit. *Edwards v. Edwards*, 118 N.C. App. 464, 470, 456 S.E.2d 126, 129-30 (1995).

6. Defendant's failure to pay alimony pursuant to the Separation Agreement revolves around a single wrong, that is the failure to pay. Additionally, both lawsuits revolved around Plaintiff's asserted cause of action for breach of contract.

7. The doctrine of res judicata applies to all points which properly belonged in the prior action and which the parties, exercising reasonably [sic] diligence, might have brought forward at that time. *Id.* ("*res judicata* applies 'not only to the points upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject in litigation and which the parties *exercising reasonable diligence*, might have brought forward at the time and determined respecting it.")(internal citation omitted).

8. The 2020 Order denying specific performance was a final judgment on the merits.

9. The cause of action in the 2019 Lawsuit and the 2023 Lawsuit involves the same wrong. With the exercise of reasonable diligence, the claim for money damages could have been litigated in the 2019 Lawsuit.

10. The parties are undisputably identical in both lawsuits.

11. Accordingly, the doctrine of res judicata bars Plaintiff's current claim for money damages for breach of the Separation

Agreement's alimony provision.

12. Counsel for Plaintiff argued that *Edwards v. Edwards*, 118 N.C. App. 464, 456 S.E.2d 126, (1995) and *Shelton v. Fairley*, 72 N.C. App. 1, 323 S.E.2d 410 (1984) stand for the proposition that a Court may enter judgment for money damages after a prior lawsuit resulted in an order denying or awarding specific performance. Plaintiff's argument is misplaced, as these cases expressly carve out exceptions to the doctrine of res judicata in special instances, none of which are applicable here.

13. This Court concludes that when a decree has ordered, or declined to order, compliance with a portion of a Separation Agreement, a party cannot then bring a breach of contract action against the breaching party for the same obligations of the Separation Agreement that are subject to the decree of specific performance.

14. Based on the record before the Court, judgment on the pleadings is proper as it relates to Plaintiff's attempt to relitigate a claim for breach of contract surrounding Defendant's alleged breach of [the] alimony provision of the Separation Agreement, and/or Plaintiff's attempt to litigate a claim for money damages that should have been brought in the first lawsuit with reasonable diligence.

. . . .

16. As a matter of law, Plaintiff is barred from bringing an action for breach of contract and money damages surrounding Defendant's alleged breach of the alimony provision of the Separation Agreement by the doctrine of merger and res judicata.

The trial court thereby granted Defendant's Motion for Judgment on the Pleadings and dismissed with prejudice "Plaintiff's claims for breach of contract and money damages arising from an alleged breach of the [A]limony [P]rovision of the Separation Agreement[.]"

On 12 September 2024, Plaintiff filed a Notice of Voluntary Dismissal in the trial court, in which she "specifically dismisse[d], without prejudice, all claims of breach of contract arising from those subject contract provisions OTHER than [the Alimony Provision]." On the same day, Plaintiff timely filed Notice of Appeal of the Order Granting Defendant's Motion for Judgment on the Pleadings.

## **Appellate Jurisdiction**

As an initial matter, Defendant contends Plaintiff's appeal is an impermissible interlocutory appeal and should be dismissed. Specifically, Defendant argues the trial court's 2024 Order leaves pending Plaintiff's claim for breach of provisions of the Separation Agreement obligating him to make loan payments. Alternatively, Defendant argues, notwithstanding Plaintiff's voluntary dismissal of that claim, Plaintiff failed to show facts that support an interlocutory appeal, which also requires dismissal. Defendant's contentions on both counts are entirely misplaced.

First, this Court has routinely recognized where a trial court grants partial relief dismissing some claims against a defendant and a plaintiff subsequently voluntarily dismisses the remaining claims, the trial court's order is no longer interlocutory but becomes a final judgment. *See Goodman v. Holmes & McLaurin Att'ys at Law*, 192 N.C. App. 467, 471-72, 665 S.E.2d 526, 530 (2008) ("[P]laintiff voluntarily dismissed all of the claims which survived the trial court's two orders of 2 November 2006. Thus[,] plaintiff's claims were no longer interlocutory, and any rationale for dismissing the appeal as interlocutory fails."); *Curl v. Am. Multimedia,*

*Inc.*, 187 N.C. App. 649, 653, 654 S.E.2d 76, 79 (2007) ("We conclude that, following the dismissal of Plaintiffs' remaining claims, their appeal was no longer interlocutory.").[7] Defendant cites no authority to the contrary.

Here, as Defendant acknowledges, Plaintiff voluntarily dismissed her remaining claim following the trial court's grant of Judgment on the Pleadings on the claim for breach of the Alimony Provision of the Separation Agreement. Thus, the trial court's 2024 Order is no longer interlocutory but became a final judgment of a District Court from which appeal may be taken. *See* N.C. Gen. Stat. § 7A-27(b)(2) (2025).

Second, in her Statement of the Case in her brief, Plaintiff quite plainly states "On 12 September 2024 Defendant filed a voluntary dismissal of the other pending claims, without prejudice." A fact Defendant, again, does not contest. Plaintiff includes a specific citation to the Record page at which the Voluntary Dismissal may be found. Plaintiff also includes a Statement of the Grounds for Appellate Review in her brief, which sets forth the appeal as one from a final judgment and cites the statute authorizing appeal from the final judgment of a district court: Section 7A-27(b)(2).

Here, Plaintiff's appeal is from a final judgment. Thus, it is not necessary for Plaintiff to offer facts and argument to establish the challenged Order affects a

---

[7] As *Curl* notes, this principle generally applies whether voluntary dismissal of the other claims is with or without prejudice. *See Curl,* 187 N.C. App. at 653, 654 S.E.2d at 79.

substantial right under N.C. R. App. P. 28(b)(4).[8] Therefore, Defendant's arguments to the contrary are rejected. Consequently, this Court has jurisdiction over Plaintiff's appeal.

## Issue

The dispositive issue on appeal is whether the trial court erred in granting Judgment on the Pleadings to Defendant in the 2024 Order on the basis the doctrines of res judicata and merger operate as a complete bar to Plaintiff's breach of contract claim seeking money damages for unpaid alimony because of the 2020 Order denying Plaintiff's request for specific performance of the Alimony Provision.

## Standard of Review

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." N.C. Gen. Stat. § 1A-1, Rule 12(c) (2025). "A party seeking judgment on the pleadings must show that 'the complaint . . . fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar thereto.' " *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70, 852 S.E.2d 146, 151 (2020) (alteration in original) (quoting *Van Every v. Van Every*, 265 N.C. 506, 510, 144 S.E.2d 603, 606 (1965)). The "function" of Rule 12(c) "is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209

---

[8] To be fair, better practice may be to expressly explain in the Statement of Grounds for Appellate Review why the trial court's Order constitutes a final judgment under our caselaw.

S.E.2d 494, 499 (1974). A Rule 12(c) motion "is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Id*. "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false."[9] *Id*. (citations omitted).

However, "[j]udgments on the pleadings are disfavored in law, and the trial court must view the facts and permissible inferences in the light most favorable to the non-moving party." *Groves v. Cmty. Hous. Corp. of Haywood Cnty.*, 144 N.C. App. 79, 87, 548 S.E.2d 535, 540 (2001) (citation omitted). Because judgment on the pleadings is a "summary procedure" and "final," Rule 12(c) motions "must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the

---

[9] It bears noting here, although Plaintiff's Amended Complaint makes no reference to the First Lawsuit seeking specific performance or the 2020 Order denying specific performance, Defendant's Amended Answer specifically alleged as an affirmative defense the existence of the First Lawsuit seeking specific performance and its denial as a bar to the present breach of contract claim seeking money damages and attached to his Motion for Judgment on the Pleadings both Plaintiff's July 2019 Complaint requesting specific performance and the 2020 Order denying it. *See Minor v. Minor*, 70 N.C. App. 76, 78, 318 S.E.2d 865, 867 (1984) ("[In reviewing a Rule 12(c) motion,] [t]he trial judge is to consider only the pleadings and any attached exhibits, which become part of the pleadings." (citations omitted)); *cf. S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 618, 659 S.E.2d 442, 454 (2008) ("[T]he trial court considered the third amendment which was appended to the Belvin defendants' answer and effectively converted the Belvin defendants' Rule 12(b)(6) motion to dismiss into a Rule 12(c) motion for judgment on the pleadings."). Here, Plaintiff did not contest the existence of the First Lawsuit and the resulting 2020 Order and does not argue on appeal these materials were improperly considered at this stage. *See Reese v. Charlotte-Mecklenburg Bd. of Educ.*, 196 N.C. App. 539, 545-46, 676 S.E.2d 481, 486 (2009) (concluding documents attached to Motion for Judgment on the Pleadings may be considered by the trial court when they were referenced in the pleadings and non-movant did not object to their consideration and even admitted the material was properly before the trial court); *but see Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 205, 65 S.E.2d 701, 708 (2007) ("[A] document attached to the moving party's pleading may not be considered in connection with a Rule 12(c) motion unless the non-moving party has made admissions regarding the document." (citation omitted)).

merits." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 (citation omitted). "[W]e review the trial court's rulings granting or denying motions for judgment on the pleadings *de novo*." *DiCesare*, 376 N.C. at 70, 852 S.E.2d at 151-52 (citations omitted).

## Analysis

On appeal, Plaintiff argues the trial court erred in granting Judgment on the Pleadings on the basis res judicata and merger barred her Second Lawsuit seeking money damages for breach of contract. At a minimum, Plaintiff contends, a breach of contract claim seeking money damages for unpaid alimony, which was not included in the First Lawsuit seeking specific performance, or for arrearages that had not accrued at the time are not barred. As such, Plaintiff requests the 2024 Order be reversed and the matter be remanded to the trial court.

Defendant contends the 2020 Order denying specific performance in the First Lawsuit bars any subsequent breach of contract claim for unpaid alimony under the Separation Agreement. Effectively, Defendant asserts the trial court's prior determination Plaintiff was not entitled to specific performance for unpaid alimony at the time of the First Lawsuit completely relieves him of his alimony obligation under the Separation Agreement. Defendant contends the trial court properly dismissed Plaintiff's claim at the Rule 12(c) stage on the pleadings.

A. *Obligation to Pay Alimony under Separation Agreement*

"A marital separation agreement which has not been incorporated into a court order is generally subject to the same rules of law with respect to its enforcement as

any other contract." *Condellone v. Condellone*, 129 N.C. App. 675, 681, 501 S.E.2d 690, 695 (1998) (citation and quotation marks omitted). An unincorporated separation agreement may be enforced through the equitable remedy of specific performance. *Reeder v. Carter*, 226 N.C. App. 270, 275, 740 S.E.2d 913, 917 (2013) (citation omitted). A plaintiff seeking specific performance must prove: (1) the remedy at law is inadequate; (2) the defendant has the ability to perform; and (3) the plaintiff has performed her own obligations. *Id.* (citations omitted). "As a general proposition, the equitable remedy of specific performance may not be ordered unless such relief is feasible; therefore[,] courts may not order specific performance where it does not appear that [the obligated party] can perform." *Condellone*, 129 N.C. App. at 682, 501 S.E.2d at 695 (citations and quotation marks omitted).

In the case *sub judice*, the 2020 Order denying specific performance made three pertinent Conclusions of Law. First, after finding Defendant had "failed to pay alimony since April 2019[,]" the trial court concluded Plaintiff had "complied with her obligations pursuant to the parties' [S]eparation [A]greement." Second, the trial court denied Defendant's request to set aside the Separation Agreement as "procedurally unconscionable," as it concluded it had "no authority to modify a separation agreement." Third, the sole ground the trial court stated for its decision to deny specific performance was Plaintiff's failure to prove Defendant's ability to perform his obligations, i.e., Plaintiff did not show Defendant had the financial ability to pay $1,000 per month in alimony.

"It is axiomatic that the trial court cannot modify the terms of an unincorporated separation agreement, which stands as a contract between the parties." *Clute v. Gosney*, 290 N.C. App. 368, 375, 892 S.E.2d 233, 239 (2023) (citation omitted); *see also Jones v. Jones*, 144 N.C. App. 595, 601, 548 S.E.2d 565, 569 (2001) ("[An unincorporated separation agreement is] preserved as a contract and remains enforceable and modifiable only under traditional contract principles." (citation omitted)). Furthermore, a trial court cannot modify contractual obligations in an unincorporated separation agreement absent consent of the parties. *See Edwards v. Edwards*, 102 N.C. App. 706, 708, 403 S.E.2d 530, 531 (1991) ("[B]oth parties to a divorce may enter into . . . [a separation] agreement to settle the question of alimony, and the terms of the agreement are binding and may be modified only with the consent of both parties." (citing *Crutchley v. Crutchley*, 306 N.C. 518, 293 S.E.2d 793 (1982)). Nor can a trial court "ignore[ ] or set aside" the "provisions of a valid separation agreement . . . without the consent of the parties." *Hinkle v. Hinkle*, 266 N.C. 189, 195, 146 S.E.2d 73, 77 (1966). *Cf. Lasecki v. Lasecki*, 257 N.C. App. 24, 35, 809 S.E.2d 296, 305 (2017) ("If the trial court determines that a party to an unincorporated separation agreement is unable to perform the child support provisions therein, it *cannot modify the agreement* to lessen that party's burden; it can only decide not to order specific performance of the child support provision, or order specific performance of the child support provision in an amount less than that established in the agreement." (emphasis in original) (citation omitted)).

Here, the parties never mutually consented to modify their Separation Agreement. Indeed, in its 2020 Order, the trial court expressly concluded it had no authority to unilaterally modify an unincorporated separation agreement. *See Clute*, 290 N.C. App. at 375, 892 S.E.2d at 239. Therefore, the 2020 Order did not modify the Separation Agreement as to set aside Defendant's contractual obligations under the Alimony Provision. *See Hinkle*, 266 N.C. at 195, 146 S.E.2d at 77. Thus, we reject Defendant's contention the 2020 Order "determined that [he] no longer had the obligation to pay alimony" under the Separation Agreement in the "past, present, or future."

B. *Res Judicata and Merger*

"Under the doctrine of res judicata, a final judgment on the merits in a prior action in a court of competent jurisdiction precludes a second suit involving the same claim between the same parties or those in privity with them." *City of Lumberton v. U.S. Cold Storage, Inc.*, 178 N.C. App. 305, 309, 631 S.E.2d 165, 168 (2006) (citations and quotation marks omitted). "In order to successfully assert the doctrine of res judicata, a litigant must prove the following essential elements: (1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." *Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 84, 609 S.E.2d 259, 262 (2005). "A final judgment in a prior action bars not only all matters actually determined or litigated in the prior proceeding, but also all relevant and material matters within

the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." *City of Lumberton*, 178 N.C. App. at 309, 631 S.E.2d at 168 (citation, quotation marks, and brackets omitted).

In the case *sub judice*, it is undisputed the First Lawsuit ended in a final judgment on the merits (the 2020 Order) and the parties are identical (Plaintiff sued Defendant in both lawsuits). Thus, we analyze only the second element of res judicata: the identity of the causes of action. The cause of action in the First Lawsuit was breach of contract; the remedy sought was specific performance of the Alimony Provision. The cause of action in the Second Lawsuit was breach of contract; the remedy sought was an award of $36,000 in damages for past breaches of the Alimony Provision.

Defendant argues "the doctrine of merger in the context of res judicata," as applied to the 2020 Order denying specific performance, precluded Plaintiff from bringing the Second Lawsuit asserting the same cause of action (breach of contract), even though she sought a different remedy (money damages). Defendant further argues, due to the merger doctrine's requirement that "all damages and remedies resulting from a single wrong or cause of action . . . be recovered in one lawsuit,"[10] the

---

[10] We note Defendant misstates the authority upon which he bases this argument. Citing *Edwards v. Edwards*, but not directly quoting it, Defendant's appellate brief states: "Merger requires all damages and remedies resulting from a single wrong or cause of action to be recovered in one lawsuit." But the cited sentence from *Edwards* does not include the words "and remedies." Instead, this Court stated: "Merger requires all damages resulting from a single wrong or cause of action to be recovered in one suit." *Edwards v. Edwards*, 118 N.C. App. 464, 470, 456 S.E.2d 126, 129-30 (1995) (citation omitted).

2020 Order precludes claims for money damages because Plaintiff "could have brought the claim for money damages in the [First Lawsuit] when litigating specific performance, but she chose not to do so."

"The doctrine of merger is a collateral aspect of res judicata which determines the scope of claims precluded from relitigation by an existing judgment." *Behr v. Behr*, 46 N.C. App. 694, 698, 266 S.E.2d 393, 395-96 (1980) (citations omitted). Merger is commonly paired with the principle of "bar" in discussions of res judicata. *See, e.g., Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986). Merger provides that where the first lawsuit results in a final judgment for the plaintiff, all claims the plaintiff did bring or could have brought with reasonable diligence in the first suit "merge" with the judgment and may not be litigated in a subsequent lawsuit. *Id.* Under the principle of bar, where instead the first suit results in a final judgment for the defendant, the plaintiff is "barred" from filing a subsequent lawsuit against that same defendant on claims the plaintiff did bring or could have brought in the first suit. *Id.*

In their briefs, both parties cite this Court's opinion in *Edwards v. Edwards*, 118 N.C. App. 464, 465 S.E.2d 126 (1995). In *Edwards*, the plaintiff ex-husband sought specific performance of a provision of a separation agreement that required the defendant ex-wife to put the parties' home up for sale and divide the sale proceeds equally. 118 N.C. App. at 466, 456 S.E.2d at 127. In its final judgment, upon concluding their separation agreement was a valid contract which the defendant had

breached by failing to list the home, the trial court ordered the defendant to specifically perform the home sale obligation. *Id.* at 466, 456 S.E.2d at 128. Several months later, on the basis of a separate indemnity clause of the separation agreement, the plaintiff filed a motion seeking attorney fees incurred while litigating the prior suit for specific performance. *Id.* The trial court granted the plaintiff's motion for attorney fees. *Id.*

On appeal, the defendant in *Edwards* argued that due to res judicata, the final judgment in the prior specific performance action barred the plaintiff's subsequent suit for attorney fees. *Id.* at 467, 456 S.E.2d at 128. Specifically, the defendant argued res judicata and merger required the plaintiff to bring the fees claim in his first lawsuit, and his failure to do so precluded his subsequent motion for fees. *Id.* at 470, 456 S.E.2d at 130.

For his part, the *Edwards* plaintiff argued his indemnity claim had not accrued at the time of the first action, since "an indemnity action traditionally may not be instituted at law until damages actually have been suffered." *Id.* at 470, 456 S.E.2d at 130 (citation and quotation marks omitted). Thus, the plaintiff contended, he could not have brought the fees claim until after the trial court "ruled [the] defendant had breached the [separation] [a]greement and until [he] had incurred counsel fees[.]" *Id.*

While this Court acknowledged the plaintiff had "accurately state[d] traditional practice" regarding the accrual of indemnity claims, it noted that under the updated Rules of Civil Procedure, a party is "no longer preclude[d]" from bringing

"an indemnity claim prior to [its] accrual." *Id.* at 470-71, 456 S.E.2d at 130 (citing *Heath v. Bd. of Comm'rs*, 292 N.C. 369, 375-76, 233 S.E.2d 889, 893 (1977) (citing N.C. R. Civ. P. 14(a))). Further, the Court noted that under the rules of joinder, " 'whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action[.]' " *Id.* at 471, 456 S.E.2d at 130 (quoting N.C. R. Civ. P. 18(b)).

Thus, the "traditional practice" cited by the *Edwards* plaintiff was in tension with the applicable Rules of Civil Procedure. On one hand, we agreed with the plaintiff that his indemnity claim for attorney fees "had not accrued at the time of filing his complaint for specific performance" because no trial court had yet determined: (1) the defendant had breached the separation agreement; or (2) the plaintiff had incurred attorney fees. *Id.* On the other hand, "[n]otwithstanding [the] absence of accrual, our joinder rules would nonetheless have allowed [the] plaintiff" to join the fees claim in the first suit. *Id.* However, because the plaintiff did not join the indemnity claim in the first specific performance action, the Court considered whether res judicata and merger precluded the subsequent claim. *Id.* Ultimately, this Court held the doctrines did not bar the plaintiff's second suit, because, among other reasons, the Court did "not subscribe to the proposition that joinder of a non-accrued indemnification claim was mandatory." *Id.* at 472, 456 S.E.2d at 131.

In the instant case, Plaintiff and Defendant both cite *Edwards* in their appellate briefs. However, this case is not fully on point with *Edwards*. The question

in *Edwards* was whether res judicata and merger barred an indemnity claim that had not technically accrued when the plaintiff filed his first specific performance action, but which "nonetheless" could have been joined in the first action under the updated Rules of Civil Procedure pertaining to the joinder and accrual of claims. 118 N.C. App. at 471, 456 S.E.2d at 130. Here, Defendant asserts the 2020 Order acts as a complete bar to all claims for money damages arising from his alleged breaches of the Alimony Provision, including "future" claims which had not accrued when Plaintiff filed her Complaint in the First Lawsuit in July 2019. Thus, this case is on point with the first pertinent feature of *Edwards*, insofar as we are contemplating whether, and to what extent, if any, the final judgment in Plaintiff's first action (the 2020 Order denying specific performance) bars Plaintiff from bringing non-accrued breach of contract claims for money damages against Defendant.

However, the second pertinent feature of *Edwards* is missing. Defendant cites no authority for his apparent contention that, like in *Edwards*, "notwithstanding [the] absence of accrual," *see id.*, our Rules of Civil Procedure (or any other legal authority) would have permitted Plaintiff, in the First Lawsuit, to bring non-accrued breach of contract claims to redress non-payments of alimony *that had not yet happened*. In other words, Defendant appears to argue that Plaintiff, in her July 2019 Complaint, should have sought, as an alternative remedy to specific performance, money damages for Defendant's arrearages *and* his potential future breaches of the Alimony Provision. As Defendant's argument goes, due to res judicata and merger,

once the 2020 Order denied her request for specific performance, Plaintiff forfeited all rights to seek money damages for Defendant's past and future failures to make alimony payments.

However, in the First Lawsuit, Plaintiff could not have sued Defendant for future breaches. This is because "for a breach of contract action, the claim accrues upon breach." *Miller v. Randolph*, 124 N.C. App. 779, 781, 478 S.E.2d 668, 670 (1996) (citations omitted).

Indeed, by initially requesting specific performance, Plaintiff may have been attempting to obviate the need to file successive lawsuits to redress potential ongoing breaches. This is, in fact, the very reason our Courts have recognized the appropriateness of specific performance to enforce unincorporated separation agreements. Beginning with *Moore v. Moore*, 297 N.C. 14, 252 S.E.2d 735 (1979), our appellate courts have observed this equitable remedy is often appropriate in the context of enforcing periodic payments due under separation agreements, precisely because, unlike money damages, which compensate for past wrongs, an order granting specific performance can address potential future breaches by ordering compliance on a prospective basis. In *Moore*, our Supreme Court held a plaintiff was entitled to specific performance where the legal remedy of money damages for breaches of the alimony provision of a separation agreement was inadequate. 297 N.C. at 19, 252 S.E.2d at 739. The Supreme Court further stated

[a]n adequate remedy is not a partial remedy. It is a full and complete remedy, and one that is accommodated to the wrong which is to be redressed by it. It is not enough that there is some remedy at law; it must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.

*Id.* at 16, 252 S.E.2d at 738 (citation and quotation marks omitted). *Moore* thus "established that damages are usually an inadequate remedy in the context of separation agreements." *Diener v. Brown*, 290 N.C. App. 273, 278, 892 S.E.2d 212, 215 (2023) (citing *Moore*, 297 N.C. at 17, 252 S.E.2d at 738).

*Moore* further explained that where, as here, a plaintiff seeks to "compel compliance with a provision for periodic alimony payments in a separation agreement[,]" specific performance is a practical remedy because it reduces the "expense and delay" of filing "repeated[ ]" lawsuits "as the payments become due and the defendant fails to comply."[11] *Moore*, 297 N.C. at 17, 252 S.E.2d at 738. However, as in the instant case, where specific performance is not available, *Moore* notes a plaintiff would be forced to seek the legal remedy by "wait[ing] until payments have become due and the obligor has failed to comply. . . . then fil[ing] suit for the amount of accrued arrearage, reduc[ing] her claim to judgment, and, if the defendant fails to

---

[11] This Court has held that even a single missed alimony payment due under a separation agreement can establish the inadequacy of the remedy at law. *See Stewart v. Stewart,* 61 N.C. App. 112, 117, 300 S.E.2d 262, 266 (1983). In *Stewart*, the defendant contended the trial court's decree of specific performance was improper because the "plaintiff only alleged that [the defendant] was one alimony payment in arrears[.]" *Id.* This Court disagreed, observing, "no valid reason appears for compelling a party to accumulate arrearages before seeking specific performance." *Id.* "The breachor's initial failure to comply establishes the inadequacy of the breachee's remedy at law. To make iteration of breach prerequisite to equitable relief would afflict the equitable remedy with the very inadequacy it was designed to amend." *Id.*

satisfy it, secur[ing] satisfaction by execution." *Id.* Nothing in *Moore*, or any other authority Defendant cites, supports his argument that the denial of specific performance in a prior suit creates res judicata effects that permanently preclude a plaintiff from pursuing legal remedies by: (1) filing one or more breach of contract actions for money damages in the event the defendant continues not to pay alimony due under a separation agreement; (2) obtaining money judgments against the defendant; and (3) seeking to execute those judgments.[12] *Moore* simply states a trial court may order specific performance as a form of equitable relief in this context, assuming a plaintiff can demonstrate entitlement to the remedy. *See Reeder*, 226 N.C. App. at 275, 740 S.E.2d at 917 (stating three elements a plaintiff seeking specific performance must establish).

Nor does Defendant's argument find support from the doctrine of merger, a "collateral aspect of res judicata which determines the scope of claims precluded from relitigation by an existing judgment." *Behr*, 46 N.C. App. at 698, 266 S.E.2d at 395-96 (citations omitted). Defendant is correct in asserting merger prevents plaintiffs from splitting related claims across multiple actions by "requir[ing] all damages resulting from a single wrong or cause of action to be recovered in one suit." *Edwards*, 118 N.C. App. at 470, 456 S.E.2d at 129-30 (citing *Bockweg v. Anderson*, 333 N.C.

---

[12] At the hearing on Defendant's Motion for Judgment on the Pleadings, Plaintiff's counsel essentially stated this was Plaintiff's objective: "We can get a money judgment against [Defendant] and we can try to execute [it] for 20 years essentially is what we're allowed to do, and that's what we're seeking is a money judgment."

486, 492, 428 S.E.2d 157, 161 (1993)). However, "[w]here a plaintiff has suffered multiple wrongs at the hands of a defendant, a plaintiff may normally bring successive actions[.]" *Bockweg*, 333 N.C. at 492, 428 S.E.2d at 161 (citing *Jackson v. Kearns*, 185 N.C. 417, 117 S.E. 345 (1923)). Here, Plaintiff's Amended Complaint in her Second Lawsuit, filed in August 2023, alleged multiple wrongs. Plaintiff claimed, "Defendant failed to make alimony payments of $1,000 due the 15th day of each month since April 2019." Thus, Plaintiff sought $36,000 in damages for multiple, repeated, monthly breaches of the Alimony Provision. Therefore, the trial court erred when it concluded "Defendant's failure to pay alimony pursuant to the Separation Agreement revolves around a single wrong, that is the failure to pay." If, as alleged, Defendant failed to pay Plaintiff $1,000 per month in alimony since April 2019, he indeed committed the same single *type* of wrong but committed it multiple times. And the doctrine of merger does not stop a plaintiff from bringing successive suits to redress multiple wrongs caused by the same defendant. *See id.*

In sum, under *Edwards* and *Moore*, res judicata and merger do not completely preclude Plaintiff from bringing a breach of contract suit for money damages arising from Defendant's alleged violations of the Alimony Provision. Thus, Defendant did not meet his burden as the movant for Judgment on the Pleadings to demonstrate Plaintiff's Amended Complaint "fail[ed] to allege facts sufficient to state a cause of action or admit[ted] facts which constitute a complete legal bar thereto." *DiCesare*, 376 N.C. at 70, 852 S.E.2d at 151 (citation and quotation marks omitted). Therefore,

the trial court erroneously concluded Plaintiff was "barred from bringing an action for breach of contract and money damages . . . by the doctrine of merger and res judicata." Consequently, the trial court erred by granting Defendant's Motion for Judgment on the Pleadings.

The remaining question is whether, and to what extent, if any, Plaintiff is barred from seeking money damages for breach of contract claims which had accrued at the time she filed the First Lawsuit. In the 2024 Order, the trial court did not address this issue. Instead, it granted Judgment on the Pleadings on the ground the doctrines of res judicata and merger acted as a "complete legal bar" to any and all of Plaintiff's breach of contract claims, which encompasses both accrued and non-accrued claims. *See id.* Therefore, the issue of a potential partial bar to accrued breach of contract claims is not properly before us and remains to be litigated in the trial court on remand.

## Conclusion

Accordingly, for the foregoing reasons, we reverse the Order Granting Defendant's Motion for Judgment on the Pleadings and remand this matter to the trial court.

REVERSED AND REMANDED.

Judges WOOD and GRIFFIN concur.